**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON**

**CIVIL ACTION NO. 12-14-JBC**

**TAMMY MIRICK,**                                                                                    **PLAINTIFF**

**V.**                            **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,**                                    **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \*

  This matter is before the court upon cross-motions for summary judgment on Tammy Mirick's appeal of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB").  The court will grant the Commissioner's motion, R. 19, and deny Mirick's motion, R. 12, because substantial evidence supports the administrative decision.

  At the date of the application for DIB, Mirick was a forty-year-old female with a high-school equivalent education who could communicate in English.  AR 31, 122, 150.  Prior to the alleged disability, she worked as an office cleaner/supervisor.  AR 31-32.  Mirick alleged disabled status beginning on July 1, 2005, as a result of lumbar spinal stenosis and colonitis.  AR 122, 151.  She filed the DIB claim on December 10, 2007, which was denied initially on March 12, 2008, and upon reconsideration on June 30, 2008. AR 59-60, 122.  After a

hearing on December 9, 2009, Administrative Law Judge ("ALJ") Ronald Kayser determined that Mirick was not disabled under § 1614(a)(3)(A) of the Social Security Act. AR 22. Under the traditional five-step analysis, see *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *see also* 20 C.F.R. § 404.1520, the ALJ determined that Mirick has not engaged in substantial gainful activity since July 1, 2005, the alleged onset date, AR 18; that she has a severe impairment in degenerative disc disease of the lumbar spine (being status post laminectomy), *Id.*; that her impairments do not meet or equal a listing in the Listing of Impairments, AR 19; and that she had the residual functional capacity "(RFC") to perform the full range of light-level work and could return to her past relevant work as an office cleaning supervisor, AR 20 & 22. Thus, on January 15, 2010, the ALJ denied her claim at the fourth step. *Id.* The Appeals Council denied Mirick's request for review on November 16, 2011, and she commenced this action. AR 1-3.

Mirick challenges the ALJ's ruling on the following grounds: (1) the ALJ erred in finding that she did not meet or equal the requirements of § 1.04A and § 1.04C; (2) the ALJ erred in rejecting the opinion of Dr. Ashraf Nassef, her treating physician; (3) the ALJ erred in finding that her psychological impairments were not severe; (4) the ALJ erred in assessing her credibility; and (5) the action should be remanded for further consideration of medical records from Healthpoint Latonia,

2

which were submitted to the Appeals Council and not seen by the ALJ.  None of these arguments will prevail.

First, Mirick argues that the ALJ erred by not finding that her musculoskeletal problems met or equaled the requirements of Listing § 1.04A and § 1.04C concerning disorders of the spine.  Because Mirick failed to show all of the required criteria for each listing, the ALJ did not err.  Both § 1.04A and § 1.04C require a claimant to initially demonstrate *"Disorders of the Spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including cauda equina) or the spinal cord."  20 C.F.R. Part 404, Subpart P, Appendix 1 Section 1.04.  § 1.04A further requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1 Section 1.04A.  To meet § 1.04C, a claimant must show "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively…"  20 C.F.R. Part 404, Subpart P, Appendix 1 Section 1.04C.

Mirick has failed to show all of these requirements.  The ALJ properly noted that the record was devoid of evidence concerning nerve root compression, lumbar stenosis, spinal arachnoiditis, and ineffective ambulation. AR 19.  Dr. Hwa-Shain Yeh, the attending physician at Fort Hamilton Hospital, reported that Mirick's nerve roots were decompressed without additional pressure following her July 2006 surgery.  AR 297.  Physical examination indicated that Mirick was free of leg pain, and straight-leg raising was negative at the time of discharge from the hospital following surgery.  AR 286-287.  In January 2008, she ambulated with a normal gait, and straight-leg raising was normal.  AR 331.  Diagnostic imaging was not obtained following the surgical procedure. A claimant must present specific medical findings that satisfy all of the criteria for a particular listing.  *Foster v. Halter*, 279 348, 354 (6th Cir. 2001).  Mirick has failed to meet that burden for both listings; therefore, the ALJ did not err.

Second, the ALJ properly considered the opinion of Dr. Nassef.  In January 2009, Dr. Nassef completed a Physical Residual Functional Capacity Questionnaire in which he indicated that Mirick would frequently experience pain so severe that she would be unable to maintain attention and concentration for even simple tasks and would be incapable of even low stress jobs. AR 391.  Dr. Nassef restricted her to standing and walking less than two hours a day, sitting less than four hours a day with a need to shift positions at will, and lifting no more than 10 pounds.  AR 392-93.  He also precluded her from crouching and climbing and severely limited

4

any twisting and squatting. *Id*. When Dr. Nassef's limitations were presented to Vocational Expert ("VE") Jackie Rogers, the VE indicated that no jobs, including Mirick's past relevant work, could be performed. AR 49-50. Even though Dr. Nassef's limitations are far more severe than those found in the ALJ's RFC, the ALJ properly found that Dr. Nassef's opinion was not well-supported. AR 20.

A treating physician's opinion is entitled to superior weight unless the ALJ cites good reasons for not giving deference to the opinion. 20 C.F.R. § 404.1527(d)(2). The failure of the administration to follow its own procedural requirements can constitute reversible error even if the case is otherwise supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). Here, the ALJ indicated that the Dr. Nassef's opinion was not well-supported by acceptable clinical and laboratory data and was inconsistent with other evidence of record. AR 21. Mirick asserts that this statement is insufficient. However, the ALJ also noted Dr. Nassef's statement that no MRI scan had been performed since Mirick's surgery in July 2006. AR 21, 306. The record also shows that Dr. Nassef had seen Mirick only once since September 2006, despite his claims of seeing her every three months. AR 21, 302-312. The ALJ noted that in August and September 2006, Dr. Nassef reported only minimal tenderness in the lumbar paraspinal areas, negative straight-leg raising, and no new focal, motor, sensory, or gait abnormality. AR 20-21, 307-308. These statements go to the frequency of examination, extent of the treating relationship, and supportability of

5

the opinion, all factors that the ALJ is required to consider.  20 C.F.R. § 404.1527(d)(2)(i)(ii).  Thus, the ALJ did provide good reasons why Dr. Nassef's opinion was not adopted, and he committed no error.

Third, the ALJ erred in failing to find that Mirick suffered from a severe mental impairment, but because such error was harmless, a remand is not appropriate.  Dr. Kevin Eggerman examined Mirick in January 2008 and diagnosed dysthymia.  AR 325.  He rated her Global Assessment of Functioning ("GAF") at 60, indicating the existence of moderate psychological symptoms.  AR 326.  Dr. Eggerman noted that Mirick's ability to interact appropriately with the public, supervisors, and coworkers would be mildly to moderately impaired and her ability to respond to changes in the usual work setting would be moderately impaired.  *Id*.  An impairment can be considered not severe only if it is a "slight abnormality" having a minimal effect on the claimant's ability to function; *Farris v. Sec'y of Health & Human Servs.*, 773 F2d. 85, 90 (6th Cir. 1985).  The moderate restrictions indicated by Dr. Eggerman would constitute more than a slight abnormality.

Psychologists Ed Ross and Ann Demaree, the non-examining medical reviewers, opined that Mirick did not suffer from a severe mental impairment, AR 335, 362.  But Dr. Eggerman's opinion was entitled to greater weight because "generally, [the federal regulations] give more weight to the opinion of a source who has examined [the petitioner] than to the opinion of a source who has not examined [him or her]."  20 C.F.R. § 404.1527(d)(1).  Neither reviewer indicated reasons that

Dr. Eggerman's opinion was not well-supported. AR 335-348, 362-375. Thus, the ALJ should have found the mental impairment to be severe. However, the ALJ's error was harmless. The impairment at issue is not of Listing severity, so the analysis would proceed to Step 4, in which Mirick was found capable of returning to her past relevant work. The burden of producing evidence shifts to the Commissioner only at Step 5, when the Commissioner must identify a significant number of other jobs in the economy a claimant can perform. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d, 469, 474 (6th Cir. 2003). Mirick must show that Dr. Eggerman's mental limitations would preclude her past work as an office cleaning supervisor; otherwise the ALJ's error is harmless. Because this has not been demonstrated, a remand of the action for further consideration is not appropriate.

Fourth, Mirick asserts that the ALJ erred in considering the credibility of her subjective pain complaints. Pain complaints are evaluated under the following standard: there must be evidence of an underlying medical condition and either (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Here, Mirick suffered from a potentially painful condition, which could satisfy the first prong of the *Duncan* test, but she does not meet either of the alternative second prongs. As noted by the ALJ, Mirick supplied only minimal evidence

7

describing her post-surgery condition. AR 21. No new MRI scans were obtained since the surgery, and the examination results from Dr. Nassef and other examiners were largely normal. Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain, and objective medical evidence would not appear to be consistent with Mirick's claims of disabling pain. The ALJ, therefore, properly evaluated Mirick's subjective pain complaints.

Last, treatment notes from Healthpoint Latonia were submitted to the Appeals Council but not seen by the ALJ. R. 395-399. This fact raises an issue of potential remand for the taking of new evidence before the Commissioner, *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993), but a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 710 (6th Cir. 1988). In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence. *Id*. at 711. The party seeking the remand bears the burden of showing that a remand is proper under § 405. *Willis v. Sec'y of Health &Human Servs.*, 727 F.2d 551 (6th Cir. 1984). Mirick has cited no reason that these records would be material. The Healthpoint treatment notes do not record the existence of more severe physical restrictions than those found by the ALJ. Thus, a remand of the action for the taking of new evidence is not appropriate.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

**IT IS ORDERED** that Mirick's motion for summary judgment, R. 12, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 19, is **GRANTED**.

The court will enter a separate judgment.

Signed on January 4, 2013

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

9